IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BOBACK, | ) | Civil Action No. 2:24-cv-00344-MRH-KT |
| | ) | |
| Plaintiff, | ) | Chief District Judge Mark R. Hornak |
| | ) | |
| v. | ) | Magistrate Judge Kezia O. L. Taylor |
| | ) | |
| MICHAEL S. GEISLER, ESQ., et al, | ) | ECF No. 55 |
| | ) | ECF No. 59 |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion to Dismiss Counterclaim, ECF No. 55, be granted.  More particularly, it is recommended that the counterclaim based on a claim of intentional infliction of emotional distress be dismissed with prejudice; that the counterclaim based on a claim of abuse of process be dismissed, albeit without prejudice to be reasserted at a later stage in these proceedings if a proper basis for the claim can be established, and that the counterclaim based on a claim of defamation be dismissed without prejudice to further amendment.  It is also recommended that Plaintiff's Motion for Sanctions, ECF No. 59, be denied.

## II.    REPORT

### A.    Procedural History

Robert Boback ("Plaintiff") initiated the instant counseled case on March 15, 2024, with the filing of a Complaint wherein he brings claims of abuse of process and unjust enrichment against husband-and-wife defendants as well as their counsel.  *See* ECF No. 1, *generally*.  Plaintiff asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because Plaintiff, a resident of Florida, and Defendants, residents of Pennsylvania, are citizens of different states and the amount in controversy exceeds $75,000.  *Id*. ¶ 10.

On April 8, 2024, Defendants filed a Motion to Dismiss, arguing lack of jurisdiction as well as attacking the claims on the merits. ECF No. 16. On that same day, Defendants also filed a Motion to Strike, ECF No. 18, requesting that Plaintiff's Complaint be stricken pursuant to Fed. R. Civ. P. 12(f). On April 15, 2024, Plaintiff filed a Response in Opposition to the Motion to Dismiss. ECF No. 24. On April 16, 2024, Plaintiff filed a Response in Opposition to the pending Motion to Strike. ECF No. 28.

On November 18, 2024, respective Reports and Recommendations were issued recommending that both motions be denied. ECF Nos. 40, 41. No objections were filed and on December 6, 2024, the Reports and Recommendations were adopted by Order entered. ECF No. 42. Thereafter, Defendants filed their Answer, which included a Counterclaim. ECF Nos. 43, 47.

Plaintiff filed a Motion to Dismiss the Counterclaim on January 16, 2025. ECF No. 48. An Amended Answer was subsequently filed with the same counterclaim. ECF No. 53. Plaintiff then moved again to dismiss the counterclaim. ECF No. 55. Defendants submitted a response to the Motion to Dismiss; ECF No. 61, and Plaintiff filed a Reply, ECF No. 62. Plaintiff later filed a Motion for Sanctions, ECF No. 59, to which Defendants have also responded, ECF No. 63. Thus, both Motions are now ripe for review.

**B.    Factual Allegations**

This action arises out of events that occurred as part of a mortgage foreclosure proceeding involving the residential property of Defendants Michael and Cynthia Durando ("the Durandos"). ECF No. 1 ¶ 1. Specifically, in 2004, the Durandos took out a mortgage and purchased a home. *Id*. ¶ 12. By 2021, the Durandos were failing to make timely mortgage payments, and on at least two occasions, between 2021 and 2022, foreclosure proceedings were initiated. *Id*. ¶ 13. On August 8, 2022, the mortgagor (PNC Bank National Association) again initiated foreclosure

proceedings against the Durandos. *Id*. ¶ 14. *See* Docket for Case No. MG-22-000576 (Allegheny County).

On March 1, 2023, a Praecipe for Writ of Execution on the Property was filed, and a sheriff's sale was scheduled for May 1, 2023. *Id*. ¶ 16. The Durandos were served with Notice of the sheriff's sale on March 11, 2023, at which time they owed over $130,000 in back mortgage payments and costs. *Id*. Mr. Durando requested that the sheriff's sale be postponed so that he could get current on the mortgage. *Id*. ¶ 17. Pursuant to the Notice of Continuance, a copy of which is attached to Plaintiff's Complaint as Exhibit 1, the sheriff's sale was rescheduled for June 5, 2023. ECF No. 1-2. Notice of this continuance was served on the Durandos on April 23, 2023. *Id*. On June 5, 2023, Plaintiff purchased the property at the sheriff's sale, with the closing scheduled to occur on July 18, 2023. ECF No. 1 ¶ 20.[1] Thereafter, Plaintiff filed a Petition to Intervene in the state foreclosure proceeding on June 14, 2023.

On June 22, 2023, the Durandos, through their counsel, Defendant Attorney Geisler, filed a Petition to Set Aside the sheriff's sale ("Petition"), asserting that they were not provided with notice of the continuance date. *Id*. ¶ 21. The foreclosure proceeding involving the Petition entered litigation, and at least one deposition was conducted. *Id*. ¶¶ 14-25. During the course of the underlying foreclosure proceeding, Defendant Geisler refused to make Mrs. Durando available for deposition, citing spousal privilege, even though the Petition was filed in her name. *Id*. ¶¶ 23, 26. Plaintiff filed an Emergency Motion to Compel, which the trial court granted, allowing for Mrs. Durando to be deposed, subject to certain limited restrictions associated with spousal privilege.

---

[1] Plaintiff submits that "[a]fter the sale, the County prepared a deed deeding the property to Mr. Boback and informed the taxing authorities that he is the owner of the property. The County's real estate website lists Mr. Boback as the owner and the person responsible for taxes. . . . However, the Petition to Set Aside Sheriff's Sale filed by Defendants . . . prevented the Deed from being actually recorded." *Id*. ¶ 3.

*Id*. ¶¶ 26-27.  Defendant Geisler appealed the trial court's Order to the Superior Court, in response to which Plaintiff's counsel filed a Motion to Quash, that the Superior Court granted.  *Id*.  ¶¶ 28-29.  Defendant Geisler once again appealed the decision, this time filing a Petition for Allowance of Appeal to the Pennsylvania Supreme Court.  *Id*.  ¶ 30.[2]  Plaintiff contends that these filings have afforded Defendants the opportunity to "continue to freeload off of Mr. Boback *via* the time gained by filing the frivolous appeals."  *Id*. ¶ 39.

Following the sheriff's sale, and for at least ten (10) months thereafter, the Durandos continued to live in the home that Plaintiff purchased.  *Id*.  ¶ 34.  Since the sheriff's sale, Plaintiff has been paying property taxes on the property while not being able to take possession of the same.  *Id*.  ¶ 35.  As a result of Defendants' conduct, Plaintiff avers that he suffered and continues to suffer pecuniary loss related to the property, including "payment of taxes, interest costs, lost rent or profit and resultant legal fees and costs . . . ."  *Id*. ¶ 40.  As relief, Plaintiff seeks compensatory and punitive damages.

Defendants' counterclaim relies on many of these same facts with respect to the foreclosure proceedings, the sheriff's sale of the property and the Dorundos' subsequent efforts to set aside the sheriff's sale in the Allegheny County Court of Common Pleas and the legal proceedings attendant thereto.  *See* ECF No. 53 ¶¶ 50-90.  Defendants further allege that Plaintiff failed to file Cynthia Dorundo's deposition transcript by the discovery deadline, *id.* ¶ 90; has harassed Defendants, "claiming that he was the owner now, that they were trespassers and freeloaders, and should leave the property at once or he would call the authorities to have them removed," *id.* ¶ 61; "gained access to the subject property and was inside the subject property by false pretenses, photographed the personal property of the Defendants and used the photos in the deposition of the

---

[2]  The Pennsylvania Supreme Court issued an Order denying the Petition.  ECF No. 36-1.

Defendant Cynthia M. Dorundo," *id.* ¶ 95; "has not produced any insurance policy on the subject premises," *id.* ¶ 96; "has held himself out as the owner of the subject property even though he has not been delivered a deed to the subject property," *id.* ¶ 97; and "has no personal knowledge as to whether the Defendant, Michael A. Dorundo and the Defendant, Cynthia M. Dorundo received timely notice of the continued Sheriff's Sale," *id.* ¶ 98.

**C.    Legal Standard**

**1.    Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) governs Plaintiff's motion to dismiss Defendants' counterclaims. *Axalta Coating Sys., LLC v. Midwest II, Inc.*, 217 F. Supp. 3d 813, 818 n. 35 (E.D. Pa. 2016) (citing *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011)) ("Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint"). As such, any reference to a claim made in a complaint within this standard of review section is equally applicable to claims made in a counterclaim.

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations . . . a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

 **2.     Fed. R. Civ. P. 11**

In this Circuit, "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991). *See also Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) (holding that "the standard for testing conduct under Rule 11 is reasonableness under the circumstances") (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)). "Reasonableness" in the context of Rule 11 has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co.*, 930 F.2d at 289; *Business Guides v. Chromatic Comm.*, 498 U.S. 533, 551 (1991); *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991).

Significantly, the moving party is not required to make a showing of bad faith. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Nevertheless, the filing of a frivolous motion cannot be explained away by pleading an "empty head, pure heart." *Acevedo v. Monsignor Donovan High Sch.*, 2006 WL 2594877, at *2 (D.N.J. Sept. 11, 2006) (citing *Clement v. Public Service Electric & Gas Co.*, 198 F.R.D. 634, 637 (D.N.J. 2001) (quoting Fed. R. Civ. P. 11, adv. cmte. notes (1993)). *See also Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 810 (3d Cir. 1992). To comply with the mandates of Rule 11, counsel is required to conduct a "reasonable inquiry into both the facts and law supporting a particular pleading." *Acevedo*, 2006 WL 2594877, at *2 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 187 n. 7 (3d Cir. 2002). *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) ("The rule imposes on counsel a

duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen'").

**D.**    **Discussion**

    **1.**    **Counterclaim**

In their Amended Answer, Defendants present a counterclaim against Plaintiff for abuse of process. ECF No. 53 ¶¶ 49-108. Defendants' counterclaim is predicated on Plaintiff's conduct in the underlying state court proceeding as well as allegations of conduct related to the instant litigation. As Plaintiff points out, Defendants' counterclaim is comprised of three distinct torts: intentional infliction of emotional distress, abuse of process and defamation. ECF No. 58 at 1. Each will be addressed in turn:

    **a. Intentional Infliction of Emotional Distress**

Defendants allege a counterclaim of intentional infliction of emotional distress ("IIED"). "To state [an IIED] claim, a plaintiff must allege that: (1) defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) it caused emotional distress, and (4) the emotional distress was severe." *Quintana v. City of Philadelphia*, 2018 WL 3632144, at *9 (E.D. Pa. July 30, 2018) (citing *Frankel v. Warwick Hotel*, 881 F. Supp. 183, 187 (E.D. Pa. 1995) (citation omitted)). In addition, the plaintiff "must allege physical manifestations of the emotional distress." *Washington Area Humane Soc'y*, 2020 WL 6364762, at *8 (W.D. Pa. Oct. 29, 2020) (citing *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. 2004)).

After recounting allegations of the underlying foreclosure case, ECF No. 53 ¶¶ 50-98, Defendants conclude that Plaintiff, "in the filing and prosecution of this meritless civil action has caused the intentional infliction of emotional distress by his intentional and outrageous conduct and the Defendants have been damaged thereby and continue to be damaged thereby." *Id.* ¶ 101.

Initially, however, insofar as Defendants premise this claim on the "filing and prosecution" of the instant case, they do not ascribe any particular conduct or actions by Plaintiff *in this litigation* to support their claim of intentional and outrageous conduct. Nor do they include allegations of any physical manifestations of the emotional distress.[3]

Thus, the substantive elements of an IIED claim are not present. An IIED claim requires "extreme and outrageous" conduct that was "intentional or reckless," causing severe emotional distress. *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022). The bar for outrageous in this context is extraordinarily high. The conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Minor v. Cumberland Twp.*, 258 F. Supp. 3d 518, 532 (W.D. Pa. 2017) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). Thus, Pennsylvania courts "have allowed recovery in only very egregious cases." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997). Further, because "the definition of 'outrageousness' is subjective and nebulous . . . objective proof of an injury is required." *Gray v. Huntzinger*, 147 A.3d 924, 927-28 (Pa. Super. 2016) (requiring medical evidence for recovery on an IIED claim).

Consequently,

> "[c]onduct that is merely insensitive or rude is not extreme and outrageous." [*Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)] (citing *GTE Sw., Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex. 1999)). "Likewise, 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct.'" *Id.* (citing *GTE Sw.*, 998 S.W.2d at 612).

---

[3] Although it is alleged that Defendant Geisler "is an elderly man with a history of heart ailment, is physically disabled, and is a stroke survivor," ECF No. 53 ¶ 105, there is no allegation that Plaintiff's conduct caused – or even exacerbated – these conditions.

*Jones v. Dallas Cnty.*, 47 F. Supp. 3d 469, 479 (N.D. Tex. 2014).[4] *Cf. Hoy*, 720 A.2d at 754 (listing as examples which state a claim for this tort as: "striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, [burying the] body in a field where [it is] discovered two months later and returned to parents[;]" "fabricat[ing] records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide[;]" and where a "physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false").

Allegations that Plaintiff filed the instant civil suit fail to meet this high bar. Further, allegations that Plaintiff intervened in the underlying foreclosure action; sought to depose one of the parties to the foreclosure action along with other relief from the court and made comments regarding his right to ownership of the subject property likewise fail to meet the high bar required to establish outrageous conduct for the tort of intentional infliction of emotional distress. Accordingly, to the extent Defendants' counterclaim posits a claim for intentional infliction of emotional distress, it is recommended that the claim be dismissed. It is further recommended that this claim be dismissed with prejudice as amendment would be futile. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (determining that dismissal without leave to amend is justified where amendment would be futile). Under the circumstances known to the Court during

---

[4] As has Pennsylvania, *see Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 190 (1987), Texas has

> adopted the Restatement's formulation of the tort of intentional infliction of emotional distress, including the definition of extreme and outrageous conduct as conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

*Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993).

the pendency of these proceedings, Defendants cannot amend their pleadings to allege facts rising to the level of atrocity needed to sustain an IIED claim under Pennsylvania law.  Accordingly, it is recommended that dismissal be with prejudice as further amendment would be futile.

### b.  Abuse of Process

Under Pennsylvania law, an action for abuse of process arises whenever legal process is employed for some coercive object which it was not the purpose of the law to effect.  *Morphy v. Shipley*, 41 A.2d 671, 674 (Pa. 1945) (citing *Mayer v. Walter*, 64 Pa. 283, 286 (1870).  *See Ciolli v. Iravani*, 625 F. Supp. 2d 276, 296 (E.D. Pa. 2009) (defining common law tort of abuse of process as "the perversion of legal process after it has begun 'primarily to accomplish a purpose for which it is not designed'") (quoting *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002)).

To establish a common law abuse of process claim, the moving party must show that the nonmoving party "(1) used a legal process against the [moving party], (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the [moving party]."  *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998)).[5]

Here, Defendants aver that

> Boback has committed abuse of process by
> a.  Conducting a deposition with no intention of filing it or making it part of the record.

---

[5]  Some confusion exists as to whether the traditional common-law abuse of process still exists as a source of relief in Pennsylvania given the existence of the statute for wrongful use of civil proceedings (Dragonetti Act) under 42 Pa. C.S. § 8351(a).  Much has been made of the comment from the Third Circuit and Pennsylvania Supreme Court that the Dragonetti Act "subsumed" the common law tort for abuse of process. *See Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F.Supp.2d 691, 699 (E.D. Pa. 2009).  However, the Pennsylvania state courts and the federal courts in this Circuit have not taken that approach and require the plaintiff to establish the elements described above.  *Id.* at 700.

    b.  Holding himself out as owner of the subject property when he has not been delivered a deed to the subject property.

    c.  Threatening to evict the Defendants, MICHAEL A. DORUNDO and CYNTHIA M. DORUNDO from their real property on the day of the Sheriff's Sale when he had not been deeded the subject property by the Sheriff.

    d.  Directing his counsel to violate the Court's restrictions on asking questions involving interspousal communications even though he knew full well the Court had forbidden it.

    e.  Filing a meritless action in this Court which he knew was meritless and designed simply to annoy, harass and punish the Defendants, MICHAEL A. DORUNDO and CYNTHIA M. DORUNDO for simply seeking to recover their residence back from the Plaintiff.

    f.  Boback has insisted wrongly and falsely that the Dorundos sought to delay eviction when from the start all they sought is to recover their property and bring the mortgage current. This insistence by Boback is itself an abuse of process.

ECF No. 53. ¶ 100.

Initially, an abuse of process counterclaim alleging "that the underlying litigation as a whole constitutes an abuse of process fails to state a claim which is ripe for adjudication." *Access Fin. Lending Corp. v. Keystone State Mtg. Corp.*, 1996 WL 544425, at *5 (E.D. Pa. Sept. 4, 1996). "By definition, a lawsuit in its entirety cannot constitute an abuse of process when it has not yet been concluded." *Id.* Thus, "a claim that a plaintiff has perverted the purpose of the entire action, when alleged in the first pleading after the filing of the Complaint, is not a claim ripe for adjudication." *U.S. ex rel. Magid v. Wilderman*, 2005 WL 469590, at *3 (E.D. Pa. Feb. 28, 2005). *See also Citizens Bank of Pa. v. Executive Car Buying Servs.*, 2010 WL 4687922, at *5 (D.N.J. Nov. 10, 2010) (applying Pennsylvania law and dismissing as premature an abuse of process counterclaim that alleged that the lawsuit as a whole constitutes an abuse of process); *Giordano v. Claudio*, 714 F. Supp. 2d 508, 533-34 (E.D. Pa. 2010) (dismissing a counterclaim for abuse of process where "the Amended Counterclaim refers only to [the plaintiff and counterclaim-

defendant's] initiation of the lawsuit and not to any discrete portions of the lawsuit (such as a subpoena or a discovery request)" because the court could not "adjudicate [the] abuse of process claim until the completion of [the plaintiff and counterclaim-defendant's] lawsuit"). Accordingly, to the extent that the present action serves as the basis for Defendants' abuse of process counterclaim, *see* ECF No. 53 ¶ 100(e), it is recommended that the Plaintiff's motion to dismiss be granted.

With respect to the abuse of process claims arising from the underlying mortgage foreclosure action in state court, most of the actions Defendants rely on in support of their claim fail to qualify as "legal process." Indeed, Plaintiff's argument that several of the component allegations in Paragraph 100, "in no manner involve[] use of, let alone perversion of process," ECF No. 58 at 16-17 (referring to Paragraphs 100(b), 100(c), 100(f)), is well-taken. As the Superior Court of Pennsylvania explained, "[t]he gist of an action for abuse of process is the improper use of *process* after it has been issued, that is, a perversion of it . . . " *Ace v. Argonaut Insurance Company*, 452 A.2d 1384, 1385 (Pa. Super. 1982) (citing *Mayer*, 64 Pa. at 286) (emphasis added). The *Ace* court further clarified that "[m]alicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued." *Id.*[6]

The only allegations here that could conceivably support a claim of abuse of process involve the deposition of Defendant Cynthia M. Dorundo. ECF No. 53 ¶¶ 100(a), 100(d). Yet, as

---

[6] Plaintiff also aptly cites to Pennsylvania's Dragonetti Act, *see* ECF No. 58 at 19, to observe that a malicious use of civil process claim requires as an element that "the proceedings have terminated in favor of the person against whom they are brought." 42 Pa. C.S. § 8351 (a)(2). *See Hyldahl v. Denlinger*, 661 F. App'x 167, 171 (3d Cir. 2016). As neither this case nor the underlying state court action have yet resolved – let alone resolved in Defendants' favor – any claim for malicious use of civil process under 42 Pa. C.S. § 8351 would be premature.

Plaintiff retorts, the deposition was conducted pursuant to a court order and sought information from a party to the case.  ECF No. 58 at 3, 17.  Relying on Pennsylvania law, the Third Circuit has reasoned that, "[f]or abuse of process to lie, the improper use must be the *primary* purpose of the proceeding and 'there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or ulterior purpose of benefit to the defendant.'"  *Gebhart v. Steffen*, 574 F. App'x 156, 160 (3d Cir. 2014) (emphasis added) (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 305 n. 2 (3d Cir. 2003) (quoting *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993)).

Consequently,

> [t]he gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure.  In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner,* 954 A.2d at 1238 (quoting *Shiner,* 706 A.2d at 1236).

At this stage of the proceedings – and in light of the available record from the state court litigation – Defendants have not alleged any "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process" with respect to the taking of Cynthia Dorundo's deposition.  Therefore, it is recommended that Defendants' counterclaim based on a claim of abuse of process be dismissed, albeit without prejudice to be reasserted at a later stage in these proceedings if a proper basis for the claim can be established.

### c.  Defamation

Lastly, Defendants allege that "Boback has defamed the Defendants and will continue to defame the Defendants, calling them deadbeats, and freeloaders, doing damage to their reputations

that should be compensated by monetary damages." ECF No. 53 ¶ 104. To proceed on a claim for defamation under Pennsylvania law, a plaintiff must prove (1) the defamatory nature of a communication; (2) its publication by defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 Pa. C.S. § 8343(a). *See also Balletta v. Spadoni*, 47 A.3d 183, 196-97 (Pa. Cmwlth. 2012).

Yet, Defendants have not attempted to provide any factual allegations in support of a well pleaded claim for defamation. Rather, Defendants have merely concluded that Plaintiff's conduct "defamed the Defendants and will continue to defame the Defendants."[7] ECF No. 53 ¶ 104. This is not sufficient. Therefore, it is recommended that the claim be dismissed, albeit without prejudice because this Court cannot say at this point that there is no set of facts which Defendants could prove that would entitle Plaintiffs to recover on a claim of defamation.

### 2.    Motion for Sanctions

Plaintiff also seeks sanctions against Defendants "under Rule 11(c) because certain allegations from Defendants' Amended Answer and Counterclaim are wholly unfounded and lack a good faith basis." ECF No. 59 ¶ 1. Plaintiff specifically directs this motion to Paragraphs 9, 91 and 95 of Defendants' amended pleading, asserting that certain allegations in these paragraphs "are inarguably devoid of any proper factual basis." *Id.* ¶ 2.

> Rule 11 aims to discourage the filing of frivolous complaints and to prevent the misuse of judicial resources for improper purposes. *See Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986). Indeed, it is intended to be used only in "exceptional"

---

[7] Nor have Defendants endeavored to address this deficiency in their response to Plaintiff's motion, ECF No. 61, which fails to address both this claim and their claim of intentional infliction of emotional distress. *Id.*

> circumstances. *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66 (3d Cir. 1988). In *Teamsters* the Court of Appeals made clear that Rule 11 sanctions should be imposed "only if the filing of the complaint constituted abusive litigation or misuse of the court's process." *Teamsters*, 841 F.2d at 68. . . . The Court of Appeals has emphasized that Rule 11 targets "abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).

*Ferreri v. Fox, Rothschild, O'Brien & Frankel*, 690 F. Supp. 400, 405 (E.D. Pa. 1988).

Sanctions have been authorized by the Third Circuit only in the "'exceptional circumstance' . . . where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (quoting *Gaiardo*, 835 F.2d at 483. *See also Morristown Daily Record, Inc. v. Graphic Comm's Union Local 8N*, 832 F.2d 31, 32 n. 1 (3d Cir. 1987) ("Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation"). And even where such exceptional circumstances exist, the court is merely authorized, not required, to impose sanctions. *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) (citing *Doering*, 857 F.2d at 194).

Each paragraph will now be addressed *seriatim*:

a. **Paragraph 9**

Paragraph 9 is found within the Defendants' Answer to Plaintiff's Complaint and denies Plaintiff's averment that Plaintiff "resides in Odessa, Florida." *Cf.* ECF No. 53 ¶ 9 *and* ECF No. 1 ¶ 9. Defendants further aver that Plaintiff "is domiciled in the Commonwealth of Pennsylvania." *Id.* The Court previously addressed Defendants' Rule 12 motion that raised a "facial challenge to this Court's subject-matter jurisdiction" and concluded that "Plaintiff adequately pled diversity of citizenship on the face of the Complaint," referencing Plaintiff's Declaration and supporting

documents, and concluding that "diversity of citizenship exists." ECF No. 40 at 7-8. Plaintiff

contends that Defendants – *via* Paragraph 9 of their Answer – once again seek to dispute that

Plaintiff is domiciled in the State of Florida. ECF No. 59 ¶¶ 3-4.

The Third Circuit has explained the differences between a facial challenge and a factual

challenge to jurisdiction:

> A facial attack, as the adjective indicates, is an argument that
> considers a claim on its face and asserts that it is insufficient to
> invoke the subject matter jurisdiction of the court because, for
> example, it does not present a question of federal law, or because
> there is no indication of a diversity of citizenship among the parties,
> or because some other jurisdictional defect is present. Such an
> attack can occur before the moving party has filed an answer or
> otherwise contested the factual allegations of the complaint. *See*
> *Mortensen*[ *v. First Fed. Sav. & Loan Ass'n*], 549 F.2d [884,] at 889-
> 92 [(3d Cir. 1977)] (noting the distinction between a facial attack
> and a "factual evaluation," which "may occur at any stage of the
> proceedings, *from the time the answer has been served* until after
> the trial has been completed." (emphasis added) (footnote omitted)).
> A factual attack, on the other hand, is an argument that there is no
> subject matter jurisdiction because the facts of the case—and here
> the District Court may look beyond the pleadings to ascertain the
> facts—do not support the asserted jurisdiction. So, for example,
> while diversity of citizenship might have been adequately pleaded
> by the plaintiff, the defendant can submit proof that, in fact, diversity
> is lacking. *See id.* at 891 ("[T]he trial court is free to weigh the
> evidence ... and the existence of disputed material facts will not
> preclude the trial court from evaluating for itself the merits of
> jurisdictional claims"). In sum, a facial attack "contests the
> sufficiency of the pleadings," *In re Schering Plough Corp.*, 678 F.3d
> at 243, "whereas a factual attack concerns the actual failure of a
> [plaintiff's] claims to comport [factually] with the jurisdictional
> prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir.
> 2008) (internal quotation marks omitted) (alterations in original).

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). *See Lincoln Ben, Life*

*Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

Notwithstanding the Court's prior decision on Defendants' *facial* challenge to jurisdiction

made at the Rule 12 stage of these proceedings, Defendants maintain the position that – for

purposes of diversity – Plaintiff is domiciled in Pennsylvania, not Florida.  Yet, because Defendants retain the option of pursuing a *factual* challenge to the Court's jurisdiction in these proceedings – and given the current state of the record – it is recommended that sanctions not be imposed on the basis of Defendants' averments in Paragraph 9.  Rather, it is recommended that the Court await further development of the record in this regard.

      **b.**    **Paragraph 91**

Paragraph 91 avers that the transcript of the deposition of Defendant Cynthia Dorundo "never became part of the record . . . in a gross abuse of process."  ECF No. 53 ¶ 91.  The Court's review of Pennsylvania law has failed to disclose any rule or practice mandating that deposition transcripts be separately filed on the docket, nor have Defendants pointed to any such rule or practice.  To be sure, to be considered on appeal, a document must be made part of the certified record transmitted to the appellate court.  *See Twp. of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 472 (Pa. Cmwlth. 2018) ("The law is well settled that an appellate court may not consider documents that are not part of the certified record") (citing *Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011)).

Here, Plaintiff avers that the allegation at Paragraph 91 "is demonstrably false," and then proceeds to recount where in the record "[i]n the underlying action in state court, each of the Dorundo's depositions or relevant excerpts thereof (including both of Mrs. Dorundo's two depositions) have been attached as exhibits to various motions and briefs."  ECF No. 59 ¶ 5.

Defendant Geisler responds, in part, by asserting that, "[i]n a petition and answer process, depositions are part of the record.  That is what the Court is supposed to rely on for evidence to make its decision.  The deposition was to be filed and made a part of the record.  It was not.  The failure to do so was an abuse of process and Defendants' statement was properly made."  ECF No.

63 at 3.  Consistent with this belief, it appears that Defendant Geisler advocated this position in the underlying state court foreclosure proceedings.  *See* ECF No. 63-2 at Exhibit A.

The crux of the matter here is the parties' divergent views on the proper procedure to ensure that deposition transcripts are made part of the judicial record for decision and review.  However, this difference of opinion fails to merit the imposition of sanctions given the admonition that sanctions under Rule 11 should be imposed only in the "'exceptional circumstance' . . . where a claim or motion is patently unmeritorious or frivolous."  *Doering*, 857 F.2d at 194.  Indeed, Rule 11 is intended "to curb abusive litigation tactics and misuse of the court's process but [ ] not . . . to hinder zealous advocacy. . . ."  *Gaiardo*, 835 F.2d at 482.  Thus, it is recommended that Plaintiff's motion for sanctions be denied to the extent it is based on Paragraph 91.

### c.    Paragraph 95

Finally, Paragraph 95 alleges that

> Boback gained access to the subject property and was inside the subject property by false pretenses, photographed the personal property of the Defendants, Michael A. Dorundo and Cynthia M. Dorundo, and used the photos in the deposition of the Defendant Cynthia M. Dorundo.

ECF No. 53 ¶ 95.  Plaintiff argues that Defendant Geisler had no good faith reason for alleging that the photographs were utilized during the deposition of Defendant Cynthia Dorundo where the absence of the photos is "a fact evident from the deposition transcripts."  ECF No. 59 ¶ 7 (emphasis removed).  Defendant responds that the challenged portion of Paragraph 95 is based on a belief that Plaintiff "surreptitiously took pictures inside the residence of Defendants personal property" and "provided them to his counsel for use in the deposition of Cynthia Dorundo.  Defendants never implied they were used as exhibits."  ECF No. 59 ¶ 3.  Defendant Geisler further states that despite request, Defendants have not been provided with copies of the pictures taken.  *Id.*

Given the semantical ambiguity over the use of the word "used" in Paragraph 95, the Court concludes that sanctions are not warranted against Defendant Geisler and therefore recommends that Plaintiff's motion be denied to the extent predicated on Paragraph 95.  *See*, *e.g.*, *Ringsred v. City of Duluth*, 187 F. Supp. 2d 1141, 1167 (D. Minn. 2001), *aff'd*, 39 F. App'x 480 (8th Cir. 2002) (denying motion for Rule 11 sanctions where the arguments "besp[oke] of semantics, and not of untruths"); *Carrasquillo v. De Joy*, 2024 WL 5322462, at *3 (D.P.R. Oct. 4, 2024), *report and recommendation adopted sub nom. Quiles-Carrasquillo v. De Joy*, 761 F. Supp. 3d 412 (D.P.R. 2025) ("Plaintiff's semantics exercise over the use of the word 'fail' does not warrant sanctions against the Government under Rule 11") (citing *Ringsred*, 187 F. Supp. 2d at 1167).  *See also McNeely v. Chappell*, 2013 WL 4004526, at *2 (E.D. Cal. Aug. 5, 2013) (a "dispute over semantics does not provide a basis for sanctions").

Accordingly, upon review of the challenged allegations in the forgoing paragraphs, it is respectfully recommended that Plaintiff's Motion for Sanctions be denied.

## III.  <u>CONCLUSION</u>

For the above reasons, it is respectfully recommended that Plaintiff's Motion to Dismiss Counterclaim, ECF No. 55, be granted.  More particularly, it is recommended that the counterclaim based on a claim of intentional infliction of emotional distress be dismissed with prejudice; that the counterclaim based on a claim of abuse of process be dismissed, albeit without prejudice to be reasserted at a later stage in these proceedings if a proper basis for the claim can be established, and that the counterclaim based on a claim of defamation be dismissed without prejudice to further amendment.  It is also recommended that Plaintiff's Motion for Sanctions, ECF No. 59, be denied.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.


Dated:  November 18, 2025                                      **BY THE COURT**


                                                                   s/ Kezia O. L. Taylor
                                                                 KEZIA O. L. TAYLOR
                                                                 United States Magistrate Judge